UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARY DOE,

                             Plaintiff,

               -v-

DARREN K. INDYKE and RICHARD D. KAHN,
*as Executors of the Estate of Jeffrey E. Epstein*,
and SARAH VICKERS,

                             Defendants.

19 Civ. 10758 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

In this diversity action, plaintiff Mary Doe[1] brings tort claims under New York law against, *inter alia*, Darren K. Indyke and Richard D. Kahn, the executors of the estate of Jeffrey Epstein ("Indyke and Kahn" or "the executor defendants"). The executor defendants now move to dismiss Doe's claim against them for punitive damages, on the grounds that, as a matter of New York law, such damages are categorically unavailable in a personal injury action against the personal representative of an estate.[2] For the reasons that follow, the Court grants that motion.

**I.  Background**

    **A.  Doe's Complaint**

Doe's Complaint, filed on November 20, 2019, alleges a horrific course of sexual and psychological abuse at Epstein's hands during 2004 and 2005. Cmplt. ¶¶ 1–15 (summary account); *id.* ¶¶ 38–106 (detailed account). It alleges that Doe came to the United States with her

---

[1] Doe has been granted leave to proceed pseudonymously. Dkt. 21.

[2] Doe also sues Sarah Vickers, who is alleged to have served as Epstein's scheduler and assistant. *See* Dkt. 1 (Complaint, or "Cmplt.") ¶ 19. Doe's bid for punitive damages against Vickers is not implicated by this motion.

parents as a young refugee from a war-torn country, and was working in pursuit of a promising career as a model when, in 2004, at age 16, she met Epstein through another model. *Id.* ¶ 2. Epstein made clear to Doe how important and powerful he was and promised to help her with her modeling career and college admissions. *Id.* ¶ 3. Doe, in turn, "believed she could trust him" and "that he could change her life." *Id.* ¶ 4. Epstein, however, "used his power over Mary to sexually abuse her, viciously and repeatedly." *Id.* ¶ 5. Aided by defendant Sarah Vickers, Epstein's scheduler and assistant, Epstein "would summon Mary to his Manhattan townhouse, order her to give him massages, and then subject her to sexual acts, the severity of which increased over time." *Id.*; *see also id.* ¶ 19. The Complaint graphically chronicles Epstein's acts of sexual abuse in the townhouse, which included forcing Doe to perform oral sex on him and later raping her. *Id.* ¶¶ 7–9; 56–105.

In late 2005, the Complaint alleges, Doe—as a result of an incident at the townhouse—"suddenly saw the truth: she was not even a human being to Epstein, she was an object," and Epstein was treating her as a prostitute, "one of many girls he treated as sexual objects." *Id.* ¶ 11. Doe had a breakdown, almost immediately thereafter left New York City, returned to her parents' home across the country, and never saw Epstein again. *Id.* ¶ 12. Epstein's abuse caused Doe to abandon her modeling career and left her humiliated, angry, and suicidal, with debilitating panic attacks and "dramatic psychological scars." *Id.* ¶¶ 13–14. Epstein's arrest in July 2019 gave Doe "brief[] hope that he might finally face consequences," but his death in August 2019 at a federal jail in Manhattan "left Mary with the desolate sense that he has evaded justice yet again." *Id.* ¶ 15.

In this action, Doe brings claims, under New York law, of battery, *id.* ¶¶ 108–13, assault, *id.* ¶¶ 114–19, and the intentional infliction of emotional distress, *id.* ¶¶ 120–27, against Indyke

2

and Kahn, solely in their capacities as executors of Epstein's estate, *id.* ¶ 18, and against Vickers, for her "integral role in operating Epstein's operation of sex trafficking Mary and other girls," *id.* ¶ 19. As its basis for personal jurisdiction over the executors, it alleges that "Epstein was subject to personal jurisdiction at the time of his death," *id.* ¶ 22, "because the tortious acts giving rise to Plaintiff's claims took place in New York State," *id.* ¶ 23. The Complaint seeks, in addition to compensatory damages and attorneys' fees and costs, "punitive damages in an amount to be determined at trial." *Id.* p. 19.

### B. The Executors' Partial Motion to Dismiss

On January 21, 2020, the executor defendants filed a partial motion to dismiss, Dkt. 17, and a supporting memorandum of law, Dkt. 18 ("Def. Mem."). It sought dismissal of the prayer for punitive damages on the ground that such damages cannot, as a matter of New York law, be sought against the personal representatives of an estate. On March 3, 2020, Doe filed a memorandum of law in opposition, Dkt. 28 ("Doe Opp'n"), and a supporting declaration by Daniel Mullkoff, Esq., Dkt. 29 ("Mullkoff Decl."), which attached Epstein's will. On March 20, 2020, the executor defendants filed a reply. Dkt. 33 ("Def. Reply").

## II. Applicable Legal Standards Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint is properly dismissed where, as a matter of law, "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. When resolving a motion to dismiss, the court must accept as true all well-pled factual allegations in the complaint

and draw all reasonable inferences in the plaintiff's favor. *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Pleadings that offer only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

**III.   Discussion**

In moving to dismiss Doe's prayer for punitive damages against them, the executor defendants argue that New York law applies to this personal injury action and categorically prohibits an award of punitive damages against the personal representatives of an estate. Specifically, they note, § 11-3.2(a)(1) of New York's Estates, Powers and Trusts Law ("EPTL") provides:

> No cause of action for injury to person or property is lost because of the death of the person liable for the injury. For any injury, an action may be brought or continued against the personal representative of the decedent, but *punitive damages shall not be awarded nor penalties adjudged in any such action brought to recover damages for personal injury*.

EPTL § 11-3.2(a)(1) (emphasis added).

Applying this statute, courts have held punitive damages unavailable in personal injury actions against executors or administrators of estates. These include federal courts determining the damages available for constitutional-tort claims under New York law, *see, e.g.*, *Graham v. Henderson*, 224 F.R.D. 59, 63 (N.D.N.Y. 2004) (precluding, based on EPTL § 11-3.2(a)(1), punitive damages claims in § 1983 action against estate administrators, and noting that New York law is "very clear" on this point); *Blissett v. Eisensmidt*, 940 F. Supp. 449, 457 (N.D.N.Y. 1996) (overturning, based on EPTL § 11-3.2(a)(1), jury's punitive damages award in § 1983 case against estate, and noting "strong policy against the assessment of punitive damages against an estate on account of wrongful conduct of the decedent"), and state courts in personal injury actions governed by New York law, *see, e.g.*, *Gordon v. Nathan*, 352 N.Y.S.2d 464, 464

(1st Dep't. 1974) (affirming dismissal of punitive damages claim because, under EPTL § 11-3.2(a)(1), defendant's death precluded recovery of punitive damages from personal representatives of estate); *cf. Flaum v. Birnbaum*, 582 N.Y.S.2d 853, 857 (4th Dep't. 1992) (affirming denial of punitive damages in case against deceased executor; citing EPTL § 11-3.2(a)(1) and the "strong policy against the assessment of punitive damages against an estate on account of the wrongful conduct of the decedent").

The law of a majority of states is in accord with EPTL § 11-3.2(a)(1), as reflected in the Restatement (Second) of Torts. *See* Restatement (Second) of Torts § 908 cmt. a (1979) ("Punitive damages are not awarded against the representatives of a deceased tortfeasor[.]"); *see also* Doe Opp'n at 12 (acknowledging that "a majority of states do not permit punitive damages against estates"). This majority rule aligns with "[t]he general rule under federal common law," that "an action survives the death of a party insofar as it is remedial[,] and not penal[,] in nature." *See, e.g., Official Comm. of Unsecured Creditors of Exeter Holdings, Ltd. v. Haltman*, No. 13 Civ. 5475 (JS) (AKT), 2017 WL 9485707, at *7 (E.D.N.Y. Aug. 3, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 3981299 (E.D.N.Y. Sept. 11, 2017).

The justification commonly given for precluding punitive damage awards against estates is that punishment and deterrence—the recognized bases for imposing punitive damages on a tortfeasor—are not advanced by imposing punitive damages on his or her estate. As the New Mexico Supreme Court explained in adopting the majority rule: "[P]unishment and deterrence are not accomplished by enabling recovery of punitive damages from the estate of deceased tortfeasors"; "[w]hen the tortfeasor cannot be punished for his culpable behavior, punitive damages no longer have the desired effect and, therefore, the victim loses the legal entitlement to

recover those damages." *Jaramillo v. Providence Wash. Ins. Co.*, 871 P.2d 1343, 1351 (N.M. 1994) (canvassing laws of other states).

Doe does not dispute that EPTL § 11-3.2(a)(1) precludes punitive damages in a personal injury action under New York law. Instead, Doe makes three arguments: (1) that defendants' motion is premature, Doe Mem. at 4; (2) that defendants' motion is improperly styled as a motion to dismiss, *id.* at 3; and (3) that the law of the United States Virgin Islands ("USVI"), not New York law, applies, and permits punitive damages against an estate, *id.* at 4–13.

Doe's first argument is quickly dispatched. Doe cites cases where courts have declined to resolve motions to dismiss aimed at prayers for relief, finding such motions premature. *See id.* at 4 (citations omitted). But a review of these cases reflects that the motions in those cases were not based on categorical preclusions of punitive damages. In contrast, where punitive damages have been unavailable as a matter of law, courts have not hesitated to dismiss prayers for such damages at the threshold. *See, e.g.*, *Murtha v. N.Y. State Gaming Comm'n*, No. 17 Civ. 10040 (NSR), 2019 WL 4450687, at *19 (S.D.N.Y. Sept. 17, 2019) (dismissing demand for punitive damages under the New York State Human Rights Law ("NYSHRL") because it "does not provide for punitive damages"); *Rosen v. N.Y.C. Dep't of Educ.*, No. 18 Civ. 6670 (AT), 2019 WL 4039958, at *9 (S.D.N.Y. Aug. 27, 2019) (granting motion to dismiss demand for punitive damages under the Age Discrimination in Employment Act and the New York City Human Rights Law ("NYCHRL") where neither statute permitted a plaintiff to recover punitive damages); *Talarico v. Port Auth. of N.Y. & N.J.*, 367 F. Supp. 3d 161, 172 (S.D.N.Y. 2019) (dismissing demand for punitive damages against Port Authority where "the Third Circuit and the overwhelming majority of district courts within this Circuit have held that punitive damages are not available against" that defendant (internal quotation marks and citation omitted)); *Canete*

*v. Metro. Transp. Auth.*, No. 17 Civ. 3961 (PAE), 2018 WL 4538897, at *9 (S.D.N.Y. Sept. 20, 2018) (dismissing demand for punitive damages where such relief was "precluded as a matter of law"); *Roman Catholic Diocese of Rockville Ctr. v. Gen. Reins. Corp.*, No. 16 Civ. 2063 (CM), 2016 WL 5793996, at *6 (S.D.N.Y. Sept. 23, 2016) ("In this case, the circumstances surrounding the denial of the insurance indemnification claim do not warrant the rare exception provided for punitive damages under a breach of contract claim.  For this reason, the Court grants Defendant's motion to dismiss the punitive damages claim."); *SJB ex rel. Berkhout v. N.Y.C. Dep't of Educ.*, No. 03 Civ. 6653 (NRB), 2004 WL 1586500, at *8 (S.D.N.Y. July 14, 2004) (dismissing punitive damages claim because such damages are unavailable in § 1983 actions against municipalities).  Provided that New York law applies to this action, this case, too, involves a categorical preclusion of such damages, under EPTL § 11-3.2(a)(1), that can be adjudicated at the threshold.

Doe's second argument is that the defendant-executors' challenge is improperly brought as a motion to dismiss.  Doe Mem. at 3 & n.3.  There is divided case authority on this point.  Courts, including in the cases cited above, have granted motions to dismiss prayers for such relief.  But others have declined to entertain such motions, stating that, "[b]ecause punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is 'procedurally premature.'" *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 220 (S.D.N.Y. 2019) (quoting *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 Civ. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017)); *see also, e.g.*, *Wiederman v. Spark Energy, Inc.*, No. 19 Civ. 4564 (PGG), 2020 WL 1862319, at *9–10 (S.D.N.Y. Apr. 14, 2020); *Jones v. City of New York*, No. 18 Civ. 1937 (VSB), 2020 WL 1644009, at *17 (S.D.N.Y. Apr. 2, 2020); *Range v. 535 Broadway Grp. LLC*, No. 17 Civ. 423 (WHP),

2019 WL 4182966, at *7 n.4 (S.D.N.Y. Nov. 16, 2017); *Okyere v. Palisades Collection, LLC*, 961 F. Supp. 2d 522, 536 (S.D.N.Y. 2013).

The Court has no occasion to resolve this conceptual debate, because the executors' motion to dismiss under Rule 12(b)(6) alternatively can be treated as a motion to strike under Federal Rule of Civil Procedure 12(f).  *See* C. Wright & A. Miller, 5C *Federal Practice and Procedure* § 1380 (3d ed.) ("[T]he technical name given to a motion challenging a pleading is of little importance inasmuch as prejudice to the nonmoving party hardly can result from treating a motion that has been inaccurately denominated a motion to strike as a motion to dismiss the complaint.").  And under Rule 12(f), on a motion or *sua sponte*, a court may strike from a pleading an "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Although motions to strike under Rule 12(f) are generally "disfavored and granted only if there is a strong reason to do so," *Anderson News, L.L.C. v. Am. Media, Inc.*, No. 09 Civ. 2227 (PAC), 2013 WL 1746062, at *3 (S.D.N.Y. Apr. 23, 2013) (internal quotation marks omitted) (citing *Roe v. City of New York*, 151 F. Supp. 2d 495, 510 (S.D.N.Y. 2001)); *see also Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)), ample authority permits striking prayers for punitive damages where such relief is unavailable as a matter of law.  *See, e.g.*, *In re Merrill Lynch Auction Rate Sec. Litig.*, 851 F. Supp. 2d 512, 544 (S.D.N.Y. 2012) (granting motion to strike sections of complaint asserting punitive damages, because pleadings did not meet high bar for punitive damages in non-fraud case of breach of fiduciary duty), *aff'd sub nom. La. Pac. Corp. v. Merrill Lynch & Co.*, 571 F. App'x 8 (2d Cir. 2014); *Cerveceria Modelo, S.A. de C.V. v. USPA Accessories LLC*, No. 07 Civ. 7998 (HB), 2008 WL 1710910, at *5–9 (S.D.N.Y. Apr. 10, 2008) (granting motion to strike prayer for punitive damages for failure to allege level of high moral culpability

necessary to sustain punitive damages award in case involving fraud and deceit); *Ladenburg Thalmann & Co. v. Imaging Diagnostic Sys., Inc.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (granting motion to strike punitive damages because complaint did not allege, *inter alia*, egregious conduct sufficient to sustain such an award); *Brady v. Port. Auth. of N.Y. & N.J.*, No. 93 Civ. 1679 (NG) (CLP), 1998 WL 724061, at *2–3 (E.D.N.Y. Oct. 15, 1998) (granting motion to strike punitive damages claims on grounds that Port Authority was immune from such damages); *Nash v. Coram Healthcare Corp.*, No. 96 Civ. 0298 (LMM), 1996 WL 363166, at *4 (S.D.N.Y. June 28, 1996) (granting motion to strike prayer for punitive damages because complaint did not allege facts sufficient to support such damages in breach of contract case).

Here, there is practical wisdom in treating defendant's motion as one to strike, if doing so is necessary to enable the Court to resolve at the jump the viability of Doe's prayer for punitive damages. With numerous personal injury actions pending against the Epstein estate as a result of the recent enactment of the New York Child Victims Act, there is value in clarifying—for the parties and settlors—the damages available in actions where the law permits a sure answer on this point.

Doe's final argument is that USVI, not New York, law governs whether punitive damages are available. Because this Court sits in New York, it applies a New York choice of law analysis to that question. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Md. Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003) ("A federal court sitting in diversity applies the choice-of-law rules of the forum state."). "Where, as here, the claims sound in tort, New York courts apply an 'interest analysis' to determine choice-of-law issues." *Golden v. Wyeth, Inc.*, No. 04 Civ. 2841 (JS), 2013 WL 4500879, at *1 (E.D.N.Y. Aug. 20, 2013). Under that analysis, punitive damages are considered to be conduct-regulating,

and "the law of the jurisdiction where the tort occurred will generally apply." *See, e.g.*, *Starr Indem. & Liab. Co. v. Am. Claims Mgmt., Inc.*, No. 14 Civ. 0463 (JMF), 2015 WL 2152816, *3 (S.D.N.Y. May 7, 2015) (quoting *Guidi v. Inter-Cont'l Hotels Corp.*, No. 95 Civ. 9006 (LAP), 2003 WL 1907901, at *1 (S.D.N.Y. Apr. 16, 2003)); *Bauta v. Greyhound Lines, Inc.*, No. 14 Civ. 3725 (RER), 2019 WL 8060183, at *10 (E.D.N.Y. Jan. 4, 2019). Here, the torts alleged occurred entirely in New York. The personal injury claims which Doe's Complaint brings arise from sexual assaults and related conduct that, as alleged, occurred exclusively within New York City—in and around Epstein's Manhattan townhouse.

Doe counters by noting that, while this rule applies as a general matter, it may be overcome if there is good reason not to apply it. Doe Mem. at 5 (citing *Nat'l Jewish Democratic Council v. Adelson*, 417 F. Supp. 3d 416, 424–25 (S.D.N.Y. 2019)). In arguing that there is reason not to apply New York law to the punitive damages question here, Doe relies on the doctrine of dépeçage, under which courts may treat the choice of law analysis for one (or more) issues in a case—in this instance, the availability of punitive damages—as distinct from the rest of its analysis, here the applicability of New York law to Doe's tort claims for compensatory damages. *Id.*; *see also 2002 Lawrence R. Buchalter Alaska Tr. v. Phila. Fin. Life Assurance Co.*, 96 F. Supp. 3d 182, 200 (S.D.N.Y. 2015); *Fed. Hous. Fin. Agency v. Ally Fin. Inc.*, No. 11 Civ. 7010 (DLC), 2012 WL 6616061, at *5 (S.D.N.Y. Dec. 19, 2012).

Doe argues that, although New York may have the greater interest in resolving issues relating to compensatory damages, the USVI, where the executors are domiciled and where Epstein's will is to be probated, has the greater interest as to punitive damages, which, unlike compensatory damages, are defendant-focused. Doe Mem. at 7–8. Doe does not argue that the executor-defendants themselves merit punishment or are in need of deterrence. Instead, Doe

10

argues that Epstein's decision to alter his will shortly before his suicide to provide that it would be probated in the USVI was strategically motivated. She argues that his executors "should not be permitted to selectively avail themselves of certain benefits of USVI law but avoid those aspects of USVI law that they do not like." *Id.* at 7.

The Court is unpersuaded. Whatever benefits Epstein envisioned for his estate by virtue of probating his will in the USVI, Doe does not articulate any relevant to this litigation. Other than conclusorily, Doe does not argue that the decision to probate Epstein's will in the USVI will have any adverse bearing on a personal injury action brought against the estate in New York that involves tortious conduct in New York. Doe does not argue, for example, that the probating of Epstein's will in the USVI stands to insulate his assets from recovery from such a plaintiff, or otherwise impede her or others victimized in New York from recovering on meritorious claims. Doe's point that the estate may prosper from being probated in the USVI is disconnected from her claims.[3]

More fundamentally, Doe does not articulate any concrete interest that the USVI has in either vindicating the rights of a victim sexually abused in a Manhattan townhouse in 2004 and 2005 or, specially relevant to punitive damages, in assuring that the perpetrator of that abuse is adequately punished and deterred. In contrast, the Second Circuit has noted the strong interest that New York has with respect to "conduct-regulating" rules, including regarding damages, with respect to unlawful behavior within its borders:

> "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney v. Osgood*

---

[3] If anything, the probating of the estate in the USVI may stand to benefit the estate's creditors, and thereby potentially Doe, to the extent that an estate probated in the USVI may avoid the high estate-tax rates imposed by New York State.

> *Mach., Inc.*, 81 N.Y.2d 66, 72 (1993).  In *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*[,] . . . we observed that, under New York law, when the jurisdictions of the conduct and injury are distinct, "it is the place of the allegedly wrongful conduct that generally has superior 'interests in protecting the reasonable expectations of the parties who relied on the laws of that place to govern their primary conduct and in the admonitory effect that applying its law will have on similar conduct in the future.'"  [739 F.3d 45, 50–51 (2d Cir. 2013)] (quoting *Schultz* [*v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 198 (1985)]) (alterations omitted).  Here, the allegedly wrongful conduct . . . took place in New York . . . .  We therefore conclude that New York's rules on fraud damages and negligent misrepresentation apply.

*AHW Inv. P'ship, MFS v. Citigroup, Inc.*, 661 F. App'x 2, 5 (2d Cir. 2016).  New York's interest is also reinforced by the fact that Doe's suit is timely only by virtue of the state's recent enactment of the New York Child Victims Act, which temporarily revived time-barred suits.  *See* Cmplt. ¶ 107.

That New York law governs the availability of punitive damages is further reinforced by Doe's having sued the executor defendants under EPTL § 11-3.2(a)(1).  It is problematic for her to cherrypick within that provision, invoking the part that authorizes a personal injury suit against an executor while disclaiming the balance, which delimits the recovery available in such a suit.[4]  *See Blissett*, 940 F. Supp. at 457 ("[I]t would be an anomalous situation indeed if plaintiff were allowed to proceed with this [§] 1983 action against the estate of Casey because of [§] 11-3.2(a)(1), while at the same time he was allowed to recover relief in the form of punitive damages, which clearly is beyond the scope of relief which that statute authorizes.").  Such a result is also inconsistent with the doctrine of dépeçage, where one forum's law is "applied to regulate certain *issues* arising from a given transaction or occurrence, while those of another system regulate the other *issues*."  *Schwartz v. Twin City Fire Ins. Co.*, 492 F. Supp. 2d 308, 328

---

[4] Doe's claims undisputedly all qualify as personal injury claims.  *See* N.Y. Gen. Constr. Law § 37-a. (defining "personal injury" as including "an assault, battery, false imprisonment, or other actionable injury to the person either of the plaintiff, or of another").  Doe does not argue otherwise.

n.11 (S.D.N.Y. 2007) (emphasis added), *aff'd sub nom. Schwartz v. Liberty Mut. Ins. Co.*, 539 F.3d 135 (2d Cir. 2008). Here, Doe, in selectively drawing upon EPTL § 11-3.2(a)(1), seeks to invoke dépeçage to apply two different sets of laws to a single issue. The doctrine does not invite such a result.

Finally, *Adelson*, on which Doe relies in claiming that USVI law governs punitive damages, is inapposite. Adelson had brought an earlier action in this District for defamation, in breach of Nevada law, against the National Jewish Democratic Council and its chair (together, "NJDC"). *Adelson*, 417 F. Supp. 3d at 420–21. That action had been dismissed pursuant to Nevada's anti-SLAPP statute. NJDC then sued Adelson, seeking punitive damages under that same Nevada statute. *Id.* On Adelson's motion to dismiss the punitive damages prayer, Judge Oetken held that Nevada's interest was stronger than New York's as to punitive damages, because Adelson had brought the initial suit under Nevada law and because it had been dismissed under the Nevada SLAPP statute on which the NJDC now pursued punitive damages. He reasoned that "because the litigant has attempted to use Nevada's defamation law to chill First Amendment rights, Nevada has a corresponding interest in punishing the litigant for maliciously invoking Nevada law and in deterring future litigants from doing the same." *Adelson*, 417 F. Supp. 3d at 426 (citing *Schultz*, 65 N.Y.2d at 198). Noting that "[p]unitive damages are designed to punish the defendant, not to compensate the plaintiff," Judge Oetken explained that "the choice-of-law inquiry for punitive damages provisions is necessarily defendant-focused" in this way. *Id.* (internal quotation marks omitted) (citing *Golden*, 2013 WL 4500879, at *3). By contrast, Judge Oetken concluded that New York's interest in the dispute was "relatively attenuated" and effectively limited to the fact that the suit was filed in federal district court in Manhattan where, notably, the claims were brought under Nevada

defamation law.  "After all, New York lacks a particularized interest either in protecting defendants from liability under Nevada defamation law or in controlling the behavior of litigants who file in the federal courts.  And where the locus jurisdiction has a merely fortuitous relationship with the case, that jurisdiction's interest in the case is minimal."  *Id.* at 426–27 (internal quotation marks and alterations omitted).  Doe's case in this District, in contrast to *Adelson*, does not build on a prior litigation in, or based on the law of, the USVI.

In any event, the choice of law debate here appears academic.  That is because, while the USVI does not have a statute on point and USVI courts have not squarely resolved the issue, it is likely that USVI common law would not permit an award of punitive damages against an estate.  In 2011, the USVI Supreme Court instructed courts to apply what it terms a "*Banks* analysis" to determine USVI common law.  This entails consideration of "three non-dispositive factors": (1) whether any USVI court has previously adopted a particular rule; (2) the position taken by a majority of courts of other jurisdictions; and (3) most importantly, which rule represents the soundest rule for the USVI.  *See Gov't of Virgin Islands v. Connor*, 60 V.I. 597, 600 (2014); *Matthew v. Herman*, 56 V.I. 674, 680 (2012); *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 979 (2011).  The parties differ as to how these factors apply, but the executors' assessment is the more persuasive.

As to the first *Banks* factor, USVI courts have repeatedly cited the Restatement (Second) of Torts § 908 favorably.  Twice, albeit in dicta, they have expressly quoted the language in comment (a) to § 908 that bars an award of punitive damages against the estate of a decedent tortfeasor.  *See Hamilton v. Dowson Holding Co.*, 51 V.I. 619, 628 (D.V.I. 2009) ("Punitive damages are not awarded against the representatives of a deceased tortfeasor nor, ordinarily, in an action under a death statute." (quoting Restatement (Second) of Torts § 908 cmt. a (1979))

(citing *Boyd v. Atlas Motor Inn, Inc.*, 16 V.I. 367, 368–69 (D.V.I. 1979) (interpreting the Virgin Island's wrongful death statue, 5 V.I.C. § 76, to preclude punitive damages)); *Booth v. Bowen*, Civ. No. 2006-217 (CVG), 2008 WL 220067, at *5 (D.V.I. Jan. 10, 2008) (same)[5]; *see also Pappas v. Hotel on the Cay Time-Sharing Ass'n*, 69 V.I. 3, 15 n.8 (V.I. Super. Ct. 2015) (applying *Banks* analysis to hold that USVI courts would adopt Restatement (Second) of Torts § 908, and citing five USVI cases in accord); *Powell v. Chi-Co's Distrib. Inc.*, No. ST-13-TOR-14, 2014 WL 1394183, at *2 n.13 (V.I. Super. Ct. Apr. 3, 2014) ("Applying a *Banks* analysis, the Court finds that Restatement (Second) of Torts § 908(2) reflects the common law of this jurisdiction . . . . [C]onsidering the longstanding application of the Restatement (Second) of Torts § 908(2) in this jurisdiction and the apparent widespread application of this rule in a majority of jurisdictions, the Court finds that the Restatement (Second) of Torts § 908(2) represents the soundest rule for the Virgin Islands, and is in accord with local public policy."). Doe has not cited any contrary authority.

As to the second *Banks* factor, the parties agree that, consistent with the Restatement, most U.S. jurisdictions do not permit an award of punitive damages against a tortfeasor's estate. *See, e.g.*, *Crabtree ex rel. Kemp v. Estate of Crabtree*, 837 N.E.2d 135, 138 (Ind. 2005) ("[t]he majority view denies punitive damages" from a deceased tortfeasor's estate); Jay Zitter, Annotation, *Claim for punitive damages in tort action as surviving death of tortfeasor or person wronged*, 30 A.L.R. 4th 707 (2020); 1 Punitive Damages: Law and Prac. 2d § 9:8 (2019 ed.) ("The prevailing view appears to be that punitive damages may not be recovered against the estate of a deceased wrongdoer."). Doe notes that some jurisdictions (like New York) have adopted this result by

---

[5] The decisions in *Hamilton* and *Booth* were dicta on this point, because the executor in each case was the plaintiff, not the defendant.

statute while others have done so by court decision.  Doe Mem. at 12.  This distinction, however, does not appear germane to the *Banks* inquiry.

As to the third *Banks* factor, the parties have not cited any evidence—beyond USVI courts having repeatedly cited Restatement § 908 with favor, including in the course of a *Banks* analysis—as to which rule would most soundly fit the USVI's interests.  Beyond recognizing that USVI courts appear comfortable with the majority rule, the Court therefore cannot assign significant independent weight to this factor.  Doe notes that the USVI's attorney general, in a separate lawsuit, is pursuing punitive damages against the Epstein estate based on alleged predations by Epstein in the USVI.  *See* Mullkoff Decl. Ex. B ¶¶ 307–10.  Doe further argues that because the only heir listed in Epstein's will—his brother Mark Epstein—allegedly knew or had constructive knowledge of Epstein's pattern of sexual abuse, it is just to deny him recovery from the estate by exposing the estate to punitive damages awards in cases such as hers.  Doe Mem. at 11.  But the decision by a government lawyer to attempt to obtain such damages in a high-profile case involving allegations of extreme conduct, or the alleged guilty knowledge of an heir in this case, do not speak to the question that the third *Banks* factor assays: which rule of law best durably serves the USVI's interests.  The Court therefore has no basis to treat this *Banks* factor as countervailing, let alone outweighing, the first two.

## CONCLUSION

For the reasons above, the Court grants the defendant-executors' motion to dismiss the prayer for punitive damages against them.  The Clerk of Court is respectfully directed to terminate the motion pending at docket 17.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: April 28, 2020
       New York, New York