```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                    :
                                              Docket #1:19-cv-10653-
 DOE, JANE,                               :   PAE-DCF and
                                              1:19-cv-10758-PAE-DCF
                   Plaintiff,             :

  - against -                             :

 INDYKE, DARREN K., et al.,               :  New York, New York
                                             March 10, 2021
                   Defendants.            :
                                             TELEPHONE CONFERENCE
------------------------------------------ :

                        PROCEEDINGS BEFORE
             THE HONORABLE JUDGE DEBRA C. FREEMAN,
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
APPEARANCES:

For Plaintiffs:          CUTI HECKER WANG, LLP
                         BY:  MARIANN M. WANG, ESQ.
                         305 Broadway, Suite 607
                         New York, New York 10007
                         212-620-2603

For the Defendants:      TROUTMAN PEPPER HAMILTON SANDERS LLP
                         BY:  BENNET J. MOSKOWITZ, ESQ.
                         875 Third Avenue
                         New York, New York 10022
                         212-704-6087

                         TROUTMAN PEPPER HAMILTON SANDERS LLP
                         BY:  MOLLY S. DIRAGO, ESQ.
                         227 West Monroe Street, Suite 3900
                         Chicago, Illinois 60606
                         312-759-1926

Transcription Service:   Carole Ludwig, *Transcription Services*
                         155 East Fourth Street #3C
                         New York, New York 10009
                         Phone:  (212) 420-0771
                         Email:  Transcription420@aol.com

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                         PROCEEDINGS                        3
 2            HONORABLE DEBRA C. FREEMAN (THE COURT):   Hi, it's
 3   Judge Freeman.  This is a conference in two cases
 4   simultaneously, 19-cv-10653; 19-cv-10758. They're both Doe
 5   cases against Indyke.
 6            Could I have your appearances, please, starting on
 7   plaintiff's side.
 8            MS. MARIANN M. WANG:  Good afternoon, your Honor, on
 9   behalf of plaintiff, Mariann Wang, of Cuti Hecker Wang.  And
10   no one else is joining, so -- (Stopped talking.)
11            THE COURT:   I'm sorry?
12            MS. WANG:   And that's it. No one else is joining.
13            THE COURT:   Okay. Just this one. Okay.
14            MS. WANG:   I just wanted to clarify.
15            THE COURT:   Okay.  And who do I have on
16   defendants' side?
17            MS. MOLLY DiRAGO:  Hi, your Honor.  This is Molly
18   DiRago on behalf of the estate. And my colleague,
19   Mr. Moskowitz, is on the phone.  We have some updates that are
20   important to the subject of the letters.
21            THE COURT:  You've talked to each other about
22   whatever this updates are, between counsel?
23            MS. DiRAGO:   Briefly.
24            MR. BENNET MOSKOWITZ:  Hi, your Honor. Bennet
25   Moskowitz here.  These are updates, literally as we speak,
```

```
 1                        PROCEEDINGS                    4
 2   kind of updates.  Good updates, but I haven't even had the
 3   chance to confer with anyone outside of --
 4            THE COURT:  I'm sure Ms. Wang is very eager to hear
 5   what these updates are.
 6            MR. MOSKOWITZ:  Yes. Happy to do so, if you'd like
 7   me to jump in now.
 8            THE COURT:  Please do, so that she can hear whatever
 9   it is that you're champing at the bit to say.
10            MR. MOSKOWITZ:  Sure. So as we said, we expected all
11   along in our letters to Court, the temporary liquidity issues
12   that caused the program administrator, the Epstein Victims
13   Compensation Program administrator, to institute her temporary
14   suspension of new claims determinations, was in fact
15   temporary; and they've now all but been resolved. On Monday,
16   meaning two days ago, the estate closed on the sale of the
17   decedent's property located in New York City that has been
18   widely publicized as having been under contract. I think those
19   stories came out a week or two ago. It was an all-day process;
20   and, in fact, until yesterday we hadn't even confirmed a
21   receipt of the sales proceeds.
22            Once we did confirm those proceeds, we also
23   yesterday promptly reached out to the U.S. Virgin Islands
24   attorney general, asked her to release her lien on the account
25   of the entity that held the property so that the estate can
```

| | | |
|---|---|---|
| 1 | PROCEEDINGS | 5 |

2  now go ahead and pay the outstanding balance of the
3  replenishment funds for the program claims payment account. I
4  understand, per an update I received not even an hour before
5  this call, the lien release is in progress. So as we speak --
6  hasn't happened yet, but it's in progress.  And once that
7  happens, you know, my expectation is that the program
8  administrator will then, you know, respond accordingly. I
9  imagine she will then lift the suspension because the
10 liquidity issue has been resolved.
11          THE COURT:  Ms. Wang?
12          MS. WANG:  If I may just ask, because one of the
13 issues around this is that, while I understand Mr. Moskowitz
14 and his team are saying this was all public information, we
15 don't always necessarily believe everything we're reading in
16 the press, and are not necessarily --
17          THE COURT:  Wait. Hold on one second. Hold on just
18 one second, speaking of the press.
19          I didn't ask -- and this is as publicly available
20 phone number. Is there anyone else on this line, besides the
21 attorneys who've identified themselves, just so we're aware?
22          No, I'm not hearing anybody. Okay, I don't have this
23 on the computer dashboard where I can see who's calling in, so
24 I just wanted to see if we had anyone else as a silent
25 participant.

```
 1                          PROCEEDINGS                         6
 2              MR. MOSKOWITZ:  There's one member of the press,
 3   though has been -- have you heard from the New York Post?
 4              THE COURT:  Oh, okay. I just like to know who's
 5   present in the courtroom, as it were.  And so the parties also
 6   know if there's someone present in the courtroom. This is the
 7   virtual courtroom or the telephone version of the courtroom.
 8   Okay, so counsel is aware.
 9              I'm sorry, Ms. Wang, you were saying?
10              MS. WANG:  So I was just going to ask, if I may,
11   although it may be obvious to the estate, it's not always as
12   obvious to particular individual plaintiff's counsel, I
13   understand that there's now been a lift and they've
14   replenished the administrator's request for funds.  But beyond
15   that, obviously, she has requests periodically.  Do they
16   anticipate that they can continue to meet those subsequent
17   requests, which I'm sure will continue? In other words, what
18   is the transfer that has just been made, and how much
19   liquidity do they have as of now?
20              MR. MOSKOWITZ:  Yeah, I'm happy to speak to that.
21   Again, this is all in the tripartite agreement that, you know,
22   plaintiffs' counsel at large negotiated and in fact entered
23   into. Ms. Wang is not a signatory, but she no doubt is aware
24   of what agreement I'm talking about.  But essentially, the way
25   it works -- and apologies; this is Bennet Moskowitz speaking
```

```
 1                          PROCEEDINGS                         7
 2   again, even though I suppose that's obvious. I know the
 3   preferred practice, which still hasn't set in after a year, is
 4   to announce ourselves.  The way it works -- and it's right
 5   there in the tripartite agreement -- is that there is supposed
 6   to be 25 million in the account; when it falls to about 10
 7   million or lower, the administrator reaches out.
 8              And this is a good opportunity to say, you know,
 9   it's not as if the program ran out of money.  That's not what
10   happened.  All that happened here was that the administrator
11   had over 5 million on hand.  She asked us to refill it by
12   about 20 million to get back to the desired 25 million amount.
13   And at that time, for the first time in the history of the
14   program, because of liquidity issues, we could only give 10
15   million. The administrator, my understanding is, didn't want
16   to be in a position of having people accept claims
17   determinations and then not being able to quickly pay them,
18   because that's one of the attributes of the program.  So the
19   administrator, not us -- again, I said this in one of our
20   letters -- it wasn't our decision, wasn't my desire, and I
21   still don't even know if it was necessary -- the
22   administrator, understandably being concerned, thought out of
23   caution it was appropriate to enact that suspension. But as to
24   Ms. Wang's broader question, you know, it's interesting, you
25   know, these questions -- and, your Honor, I don't -- it was a
```

```
 1                          PROCEEDINGS                         8
 2   while ago -- we had this discussion way back at the
 3   beginning, and that's why I submitted that letter from 2019 to
 4   the Court, to remind everyone, we were always asked this
 5   question of how much money will it take for the program to be
 6   resolved.  Well, we don't know, and I can't predict that
 7   unless all the plaintiffs' counsel get together and tell us
 8   how many more people are you putting in the program, how many
 9   people did you put in the program; I can't give a fair
10   estimate. However, I will say, based on what I do know, I am
11   confident the liquidity issues are behind us.  That could
12   change because, again, I don't know if 100 more people put in
13   claims -- the registration deadline is about to be complete,
14   and then I suppose we will be able to finally get the known
15   universe of people in the program, but we're not just there
16   yet.  We're very close to that.
17              THE COURT:  Ms. Wang, how would you like to proceed
18   here?
19              MS. WANG:  I would just -- if your Honor may, just
20   because I don't always get answers to my questions when I ask
21   them, if I may just ask -- Mr. Moskowitz, of course, is
22   focused on the things that he's interested in focusing on. He
23   didn't actually answer the question I asked, which is I
24   understand what the protocol is; I know what it is and the
25   replenishment.  And the obvious concern of the
```

```
 1                        PROCEEDINGS                         9
 2  administrator, as is the concern of an individual
 3  plaintiff's lawyer, is ultimately what -- how much more
 4  replenishment can there be, since I don't know at what
 5  point along the way my client will have he award issued to
 6  her and potentially paid out if she accepts it. What I'm
 7  asking more is, okay, you're replenishing now the 25
 8  million or the additional 20 million; how much more liquid
 9  is on hand? And I know that he has said I can't say or I
10  can't tell, but he knows how much liquid the estate now has
11  accessible for -- you know, even if he doesn't know how
12  much more ultimately will have to be paid out. Just as his
13  concern is the big picture of the total, you know, of when
14  he sends money over to the administrator, our concern is a
15  different one, which is are we putting a stay on a case
16  that is approaching a year or on two cases; and, you know,
17  will our clients be able to actually rely on this process
18  in a meaningful way, or will it just be delay. So I would
19  just ask he answer that question, which I asked, which is
20  so, okay, you're replenishing per the protocol and per the
21  agreement; I understand that.  And then how much more
22  liquid do they currently have and/or what is the prospects
23  for more liquid?
24            MR. MOSKOWITZ:  Yes, your Honor, I'd be happy to
25  answer that. I would say we didn't get asked that question
```

```
 1                       PROCEEDINGS                   10
 2  before Ms. Wang filed the letter. You could always come to
 3  us and ask these questions.  But to answer it, very
 4  clearly, it's not a secret.  We just sold the townhouse for
 5  proceeds a little under 50 million; we just, as I said,
 6  have to replenish about 20 million more.  We are working,
 7  as I've said, and there's no secret, to sell the Palm Beach
 8  property, which will bring in around another 20-plus
 9  million.  And all of this is laid out in quarterly filings
10  in the probate court.  So I'm not quite sure what I'm
11  reporting. It's exactly what's out there.
12              We have limited liquidity, but we did just sell
13  one of the largest illiquid assets the estate has, which is
14  the townhouse. We're working to sell one of the remaining
15  large assets, which is the Palm Beach property.  We are
16  also working to sell every other illiquid asset.  The only
17  thing that hasn't even been listed yet, because it's a very
18  difficult, different property -- it actually is two of them
19  -- is the one in Paris and the one in New Mexico.  And I
20  can go into why, but the fact remains we now have a lot of
21  liquidity relative to the program's needs, as far as I
22  know.  Again, if the administrator is going to come back
23  and say, "Hey, a thousand people just signed up," well, it
24  would have been nice for plaintiffs' counsel to tip us off
25  to that.  But that's the answer. We have enough money for
```

```
 1                         PROCEEDINGS                       11
 2   the foreseeable future for the program, especially because
 3   we're already past the -- I believe the program
 4   administrator calls it the registration deadline, but then
 5   the claims submission deadline is March 25th.  So we're
 6   nearing the end here.
 7            MS. WANG:  The only last thing I -- I can't help
 8   but say is just, you know, the remarks that we're supposed
 9   to report to you how many claimants there are is remarkable
10   since, of course, we all are fully aware that it's
11   impossible for us -- for me, as an individual plaintiff's
12   lawyer to know what the enormous amount of damage is that
13   Epstein did to how many hundreds of women.  So it's
14   impossible for us to answer that question, so the question
15   that you keep posing is not one for us to answer.
16            In any event, I do appreciate your Honor taking
17   the time for this, and I would not have asked for it if I
18   had actually gotten answers and, per Mr. Moskowitz's
19   raising of the issue, the only reason we wrote to the Court
20   and asked for this conference is because we did not feel we
21   were getting up-to-date information. We did not feel that
22   we had to comb through every single press report or even
23   the UVI filings, necessarily, if they can update us
24   instead.  And, particularly, as we laid out in our earlier
25   letter of February, it was remarkable to us that we were
```

```
 1                      PROCEEDINGS                      12
 2   told, you know, on January 30th, that we should submit a
 3   status report to your Honor that all things are perfectly
 4   fine, when clearly, the estate knew that they were not
 5   replenishing the funding, and it was not fine. If they had
 6   actually just been forthright with us about that at the
 7   time and told us, "We're having some issues," we probably
 8   could have avoided it and had a conversation and written a
 9   different type of status, genuine joint status update at
10   the time.  But, in any event, I just want to thank your
11   Honor for setting aside time for this.  We appreciate it.
12   And I don't particularly ask for any other relief right
13   now.  We certainly do hope that the administrator can
14   continue apace and start issuing awards again.
15              THE COURT:  Can I ask for clarity of the docket?
16   If you could put a short letter on the docket, either
17   plaintiffs' side or jointly, that just says in light of
18   this or that, we're not seeking other relief at this time
19   and, you know -- by the way, you're welcome to come back to
20   me at a later time if there's a further or  continuing
21   problem -- but just so that it's clear that there's nothing
22   that the Court is being asked to do at this time.
23              MS. WANG:  Of course. I'm happy to do that.  And I
24   would just ask, I guess, your Honor, for clarity.  There
25   had been a request, I believe from you, for monthly status
```

```
 1                          PROCEEDINGS                      13
 2   reports. I'm assuming we should continue to do those, is
 3   that correct?
 4            THE COURT:  Yes, yes. It's just that we have this
 5   outstanding issue that's been raised on the docket of these
 6   two cases, and especially because I'm not the district
 7   judge, who may take a look at this and say, "Whatever
 8   happened with this?" Just to have a little bit of
 9   resolution on the currently outstanding request that was
10   made.  And, by all means, you can put in there that any
11   withdrawal of any request for relief is without prejudice
12   to come back, assuming you were actually requesting relief
13   before, or whatever phrasing makes the most sense.
14            MS. WANG:  Yes, of course, your Honor.
15            THE COURT:  Okay. I appreciate it.
16            MS. WANG:  I mean, ultimately, from our
17   perspective, we would just -- you know, the ultimate,
18   literally, for us is just to return to the litigation.  But
19   we're not asking for that, and I understand what you're
20   asking us to do.  And I'm happy to put in a letter later
21   today on that.
22            THE COURT:  I appreciate it.  Just something
23   short.
24            MS. WANG:  Sure.
25            THE COURT:  And keep me posted.  And hopefully,
```

```
 1                          PROCEEDINGS                       14
 2   there will be a resolution that is satisfactory to
 3   everybody. All right?
 4              MS. WANG:   Thank you, your Honor. Thanks so much.
 5              THE COURT:   You're welcome.  Take care, everybody.
 6   Be well.
 7              MS. WANG:   Take care.
 8              THE COURT:   Bye-bye.
 9              (Whereupon, the matter is adjourned.)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
                                                              15
```

## C E R T I F I C A T E

I, Carole Ludwig, certify that the foregoing transcript of proceedings in the case of Doe 15 v. Indyke et al, Docket #19-cv-10653-PAE-DCF and 19-cv-10758-PAE-DCF, was prepared using digital transcription software and is a true and accurate record of the proceedings.


Signature_____*Carole Ludwig*_____

                Carole Ludwig

Date:     April 6, 2021